We'll move now to the first argument on the merits calendar and that's Andy Warhol versus Goldsmith. Andy Warhol Foundation versus Goldsmith. Thank you, Councilor. Thank you, Aaron. So let me just make sure I've got Council on the line. Mr. Pintoff? Yes, Your Honor, I'm here. And Mr. Nikas? Yes, good morning, Your Honor. Am I pronouncing your name correctly? It's Nikas, Your Honor. Nikas, I'm sorry. Sorry about that. First one I get for you after that, it's on me. Mr. Nikas, thanks. Okay, so that went longer than we imagined. Maybe yours will go longer, too. I guess we'll see. But Mr. Pintoff has reserved three minutes for rebuttal, so he's got seven out of the gate. Go ahead, Mr. Pintoff. Thank you, Your Honor. Is my audio level good? Yes, I can hear you. Everyone else can hear? Yes. Wait, is Judge Jacobs here? Yes. Okay, I just lost your visual for a second. Go ahead, Mr. Pintoff. All right. Thank you, Judge Sullivan. Good morning, Your Honors. May it please the Court. I'm Thomas Pintoff with Williams & Connolly. I'm here with my colleague Kate Meeks at the virtual Council table. We represent photographer Lynn Goldsmith and her company, Lynn Goldsmith Limited. They are the copyright owner, declaratory judgment defendants, and counterclaim plaintiffs and the appellants here. The issue on this appeal is whether the district court erred by granting summary judgment to the Andy Warhol Foundation on its fair use defense to Lynn Goldsmith's claim of copyright infringement for copying her photographic The court's review of the grant of summary judgment is de novo. I would like to focus this morning on two aspects of our appeal. Mr. Pintoff, may I ask just one, I hope, very quick question, a quickly answered question. You stress this is, of course, a grant of summary judgment that we're considering. But are you, I'm not sure, are you saying that there should be a trial because there are disputed issues of fact, or are you just saying this is really, the facts are what they are and the fair use is really a question of law and you should win rather than they should win? Your Honor, I think that this court could direct summary judgment in favor of Ms. Goldsmith as courts in the Second Circuit have done. I don't believe that there are disputed issues of material fact that require trial. However, we're here as the party that lost on summary judgment and so all inferences on the undisputed facts should be construed in our favor. And one thing Judge Lynch, I would like to note is that in three of the leading fair use cases in the Supreme Court and the Second Circuit, the court didn't decide fair use at the appellate level. The court remanded to the district court to apply the law correctly, didn't say go to trial, but said you should evaluate the factors based upon the law as we've explained. Okay, that's helpful. That answers my question. I don't want to take up more of your time with that. Thank you. Thank you, Judge. So first, in analyzing fair use factor one, the district court committed legal error by basing its ruling on Andy Warhol's transformation of Ms. Goldsmith's photograph by his adding new expression and employing new aesthetics. But the court didn't consider whether those qualities were deployed in the service of a transformative purpose or character. They were not. Relatedly, the district court also erred in the transformative use analysis by holding that the distinctiveness of Andy Warhol's style was an important part of the transformative use analysis. It is not. And this ruling in particular is part of what caused two leading copyright scholars, Jane Ginsburg and Robert Patry, to criticize the ruling as being an error. Second, in analyzing fair use factor four, the district court committed multiple legal errors. The one I'd like to focus on right now is the court failed to consider Ms. Goldsmith's unrebutted evidence that other prints photographs that she created and images in the Andy Warhol series actually occupied the same editorial license market. Ms. Goldsmith put in evidence that after Prince passed away, she licensed photographs of Prince in 2016 to People magazine and Newsweek magazine for, I believe, a thousand dollars each. But we've set it forth in our opening brief. The Warhol Foundation in 2013, I believe, licensed one of the Warhol images to a commemoration of Vanity Fair's 100th anniversary. And that was for a license with a comparable amount of money. You know, factor four requires analysis of market substitution for reasonable, likely markets. And although these are different photographs of Goldsmith, it establishes that the magazine editorial use market is a reasonable market for her to exploit with the photograph. So, Mr. Heddoff, I'm interested in this point. And I hear your point. Is that what this case is ultimately about? Is the market for licensing? And for example, I know that you are not asking, I think you're not asking, I guess I can confirm this with you, for the Warhol images to be destroyed or to be turned over to you or something of that sort. In terms of the market for sale of the original, so to speak, one of the, you know, to a collector, an art collector of the Warhols or of the Goldsmiths, I might think that those occupy separate spaces in the market. With respect to the licensing, I think you have a good point that there's something similar going on, but isn't copyright like unitary? I mean, if you were here asking for something more, would you be entitled to that? If we say that there was an infringement here, what does that do to the status of the Warhol images in some other space than the licensing market? So, thank you for the questions, Judge. First of all, that's correct. Ms. Goldsmith is not seeking the destruction of any Warhol art, anything hanging in the museum. That was an interesting issue that actually came up in the Carriou case, because there the district court ruled that the Richard Prince paintings need to be impounded. And when the Court of Appeals in Carriou sent the case back down, they said, you know, if the plaintiff wins on the five works that are going back for consideration, we'd like the district court to consider appropriate injunctive relief. So, we're not seeking the destruction of any Andy Warhol silkscreens or other art. Judge Lynch. And if we decided this in favor of your client, then I take it there would be a separate issue if somebody in a similar situation asked for more ambitious injunctive relief. The appropriateness of that injunctive relief would be decided separately. Is that your point? Completely correct, Your Honor. We're here talking about fair use on a summary judgment record. And Judge Lynch, you said copyright is unitary. I would say copyright is a lot of things, but unitary is not one of them. It's as far from unitary as you can get. And in fact, when you're talking about whether a particular use is a fair use, the court needs to consider the use. And the same kind of work can be employed for different uses. So, a good example of it is Judge Jacob's opinion in the Fox News Network versus TVI's case, where TVI's copied Fox programming and made it available in all sorts of different ways. And so, the TVI's opinion said, we have to look at the different functions differently to determine whether one might be a fair use and one might not be a fair use. So here, hanging a million-dollar painting up in the Pittsburgh Museum of Art, very different from after Prince has passed away or in commemoration of Prince's life, going into the editorial market with other people who have images of Prince and I want to say, and I'm over time, but just to conclude on that issue, look, when a great superstar like Prince passes away and a major magazine like Vanity Fair says, let's have a commemorative issue, let's put something on the cover. It's great to put a warhole on it, but it doesn't have to be a warhole. It's not going to be Marilyn Monroe or Elizabeth Taylor or a suet can, it's going to be an image of Prince. And that is a specific example of the broad editorial market that the record establishes that both Ms. Goldsmith and the Warhol Foundation occupy. All right. Why don't we leave it there then? Thank you, Mr. Hentoff. We'll now hear from Mr. Nickus for 10 minutes. Thank you, Your Honor. May it please the court, my name is Luke Nickus. I'm here with my partner virtually, Maren Shah, on behalf of the Andy Warhol Foundation for the Visual Arts. The fair use test that applies to this case has been set forth clearly in the U.S. Supreme Court's decision in Campbell and described in similar terms by this court in Blanche v. Coons, Carey TCA Television, as recently as February of this year, the court in a state of Smith v. Graham and in Judge Sullivan's decision in Hughes v. Benjamin, both described the test. In this case, the district court faithfully applied that test to the undisputed facts and on summary judgment found fair use. That decision is comfortably within settled law and does not require the court to expand the test or test the boundaries of any of its decisions on fair use or copyright law. That may be right. That may be right. But this isn't about changing the test. It's about whether the court applied it correctly, right? And yes, it did, Your Honor. Let me ask you about purpose. Can I ask you about purpose? So how would you articulate the purpose of the Warhol prints that were initially created? Yes, Your Honor. The purpose of the Warhol, and let me root this in the court's discussion of purpose in the Coons case, where in Coons, the purpose was in creating the art to focus on the object itself and the experience that the public had with the objects depicted in the underlying Isn't the purpose really to just sell magazines that have an article about prints? No, Your Honor. This is a commercial endeavor, right? And so there's a competition as to whose image is going to be on the cover of the article, of the magazine that has the articles. That seems to be the purpose. It's not to hang up on a gallant wall, right? Your Honor, that is not the purpose and that is not the question here. You look at the purpose of Andy Warhol when he created the underlying artwork. And the purpose of Andy Warhol, and it's rooted in the record, and it's stated in this court's decision, and Rogers as well, is that Warhol's work, the purpose of it is to incorporate images from popular society or of celebrities, Marilyn Monroe, Elvis Presley, Muhammad Ali, for the purpose of commenting on consumer culture and exploring the relationship between celebrity culture. I have trouble with that as a way of approaching the purpose question. Let me take an example. The late Toni Morrison wrote a number of novels. She had what purposes she had in creating those works. And she may have intended to create a certain aesthetic effect. I'm a filmmaker, and I decide I want to make a film. And I quite consciously want to have a film that's an experimental movie that emphasizes certain aspects of one of those novels and de-emphasizes others. What I'm really interested in is the creative process of making a movie out of a novel and wanting to do it in a way that no one has ever done it before. Isn't it still a wouldn't your approach to this say, anytime an artist is transforming something into a different medium and applying his or her own creative take on the underlying material, that's a transformative purpose? Your Honor, that's not the test we're offering. The example you gave is a classic example of a derivative work, transferring one story into a different medium, nothing more. That is not what happened here on two levels. With respect to purpose, and this is exactly how this court framed it in the Blanche versus Coons case. You look at the purpose, quote unquote, in using Blanche's image, and you compare them to the purpose in Blanche's goals when creating it. That's exactly the test from Coons, Blanche versus Coons at 252. In this case, the purpose for Warhol in using the image of Prince is sharply different from Goldsmith's goals in creating it. And the record, and it's a critical to look at the record on this. Well, but wait, wait, when he created this, he did two things. First of all, he was being commissioned to create an image for an article in Vanity Fair about Prince, not about Andy Warhol or about celebrity culture. And he licensed this particular image in order to copy it as an artist's reference to creating a portrait. Just as instead of going to do a portrait of you, I could ask you to sit for it, or you could say I'm too busy practicing law, but I have a photograph here of me and you can use that to create the portrait. So it seems to me he's doing a portrait of Prince for Vanity Fair in his own inimitable style, or his own imitable style as the case may be. And he's taking this particular image, paying for the right to do it for this narrow project, because it is the same thing. It's an illustration of Prince. It happens to be a different artistic take for the article. Your Honor, two points. The first is a factual one about the license. There is no evidence in the record that Warhol entered into a license agreement concerning this work, was aware of Lynn Goldsmith when he got this image, was aware that it was a photograph by Lynn Goldsmith, was paid any particular amount for this particular work. There's no evidence whatsoever that Warhol was aware of the license component in Goldsmith when this was made. But Vanity Fair licensed it, and that was the purpose of the license, was to give it to Prince as an artist reference. That's what it says in the contract, right? Vanity Fair is certainly bound by its license agreement with Goldsmith, but Vanity Fair didn't license it to make a replica of the image for the same purpose that he used all of the other images of celebrities, of Campbell Supes, for example. And when he did it, when he used the image of Prince, and I'll get to the different expression, meaning, and message in just a moment, because that's critical as well, because as you know, Campbell said purpose or character, not purpose and character must be distinct from what Goldsmith admitted was her purpose when creating the image itself. Isn't it, I mean, how narrowly should we draw the purpose? The Campbell Soup can, the Campbell Soup people are not intending to create a work of art, they're intending to have a attractive trademark to get people to buy their soup, and Warhol is making a work of art. That's a different thing. But here you've got one kind of portrait of Prince, and then you've got a different kind portrait of Prince. They're both doing portraits of Prince. Why isn't that the way we should look at the purpose? Your Honor, with respect to purpose, and again, I'll get to aesthetics, you know, expression, meaning, and message in a moment, but you should draw the purpose line exactly as you did in Blanche versus Kuhn's, which is you look at the purpose of using the image in the Warhol, and you compare it to the purpose of Goldsmith when she created it. When, if you can look at it on two different levels, number one, let's say the Court found that Warhol used this image for the purpose of putting it in an article, or adjacent to an article in Vanity Fair, for the purpose of commenting in connection with that article about Prince's fame. The title of the article is Purple Fame. That is a distinct purpose. If you accept that, if you accept that, that is a distinct purpose from Goldsmith when she created the underlying photograph. That's level number one. If I may, let me give you a hypothetical. Let's say that Ms. Goldsmith hears your argument, or reads it, and she decides to take the Warhol image of the Prince portrait, and paint highlights in blue and green over it, and license it with the purpose of showing the transformative power of color, and highlights, and style. My impression is the Foundation would have a problem with that. Your Honor, the underlying purpose in that particular example, and that is different from what Warhol did on a number of different levels, but I'll accept the hypothetical. The purpose of Goldsmith doing that, if she testifies, I was using this image for the purpose of commenting on appropriation art, the limits of appropriation art, etc., then she may have a distinct purpose. The question, however, would then need to turn, as the District expression, what is the protectable element of the Warhol? What are the protectable elements versus the Goldsmith? What is the meaning? What is the message? You'd have to look at whether she used some of that. But Mr. Nickens, isn't this, this seems to be a very unstable basis for deciding whether one needs a license, because keep in mind that often the image is licensed by a magazine, or by a website, or a newspaper, and to require them to figure out what people's aesthetic intention was, which no one is offering, by the way, before they can confidently print anything, is to render unstable the whole system of licensing, I submit. Your Honor, we've rooted both the arguments in this appeal and below in the standard from Campbell. Now, is that standard overall unstable? Does it lead to balancing of factors that are unique in each individual case? Certainly they do lead to balancing in each individual case. And so the record, there is a distinct purpose articulated between the parties. Goldsmith did not dispute that the purpose of her photography is a real effort, quote unquote, to communicate the uniqueness of people and their identities. That's at 1527 of the Joint Appendix. She did not dispute that her purpose was to depict the identity of the people she's depicting, the realistic portrait of them. That's at 347. She admitted that in the actual meaning and message of her photograph, she was communicating a message about prints. Sir, would you concede that those expressive values subsist and remain in the Warhol image? No, Your Honor, I would not. So those are purpose, message, and meaning, which are entirely distinct compared to the Warhol. Now, if you look at expressive expression, because as we know, this is rooted in the basic principle of copyright law, that you cannot copy the idea, but only the way in which it's expressed in the work. Now, if you look at the manner of expression in these works, and this is clear from the Leibowitz case, what we're looking at, the lighting, the shading, the color, the saturation, the context, and the contrast, the pose, those are all distinct in the Warhol. Now, with respect to faces and- I'm sorry, how is the pose different in the Warhol? Fundamentally in two different ways, Your Honor. Number one, the pose, where Goldsmith places most of her emphasis, Prince's body is entirely gone, leaving only a disembodied head. Now, this is a material change to the expression in Goldsmith's photograph. Goldsmith herself, this is undisputed in the record, testified that the photograph derived from her perception of Prince being in touch with the male part of himself and the female part. Well, you know, I hear you saying this, Mr. Nickus, but it still gives me pause because it gives me a whole opportunity to retain copyright in a derivative work. If I make a film of a novel, I'm totally transforming it. It's only going to take two hours to show the movie. It's going to eliminate half the episodes in the book. It may put a very different slant on it. It's certainly a very different kind of creative expression. I'm dealing with the actors and the film, the cinematographer, the lighting, the scenic design. I'm creating all kinds of things that the author maybe doesn't like, didn't want. It gives a completely different impression of the story and the characters than was there. And surely I'm making a totally new work that is unrecognizable except for the basic plot and some of the characters from the novel. Here, this picture, Goldsmith did other photos. Other people did other photos of Prince in the same time frame. And when you do a lineup and you compare all of those and you put the Warhol next to it, you know immediately which one he used. It's this one. It's much closer to the original than any film I've ever seen of a novel has been to the novel. So why doesn't this destroy the concept? If you say, well, the artist had a new purpose. He wanted to make a movie to start with, which the author deliberately didn't do. Why doesn't that work? It doesn't work because what you've described is that the translation of the same meaning and message from the original novel into a different medium of a movie. But it's not. It has a different message. I actually think this is a great story, but the author kind of got it wrong in terms of what the moral, to take a simplistic term, of the story is. And I slant the approach in such a way that the viewer of the movie comes away liking the central character rather than disdaining him or her or vice versa. Isn't that the kind of thing you're talking about here when you say that Goldsmith depicted Prince as vulnerable and Warhol depicted him as an impermeable icon of fame? No, Your Honor, it's not for two reasons. Number one, you have to separate when you look at the test, it's a disjunctive test. You have to separate purpose from character. In terms of the purpose, we've already discussed that. In terms of the character, the expression, meaning or message, what we are now talking about is not the meaning or message. That's the Goldsmith's versus Warhol. We're talking about expression. You're saying in essence that Warhol, or asking me a question, did Warhol capture the heart or the essence of the photograph? And the answer is no, and let me tell you why. In the Supreme Court's Burrough-Giles decision, and then Judge Gorsuch writing for the Tenth Circuit in the Meshworks case, the court made it clear that when the origin of the object is not owed to the photographer, and that's particularly true with faces in people, you need to, in then Judge Gorsuch's words, filter out the object from the assessment of what's protectable. If you do that here, because you do not look at prints as a protectable element of Goldsmith's photograph, the outline of his head and his face are not owed to Goldsmith. She didn't create them. You look at the lighting, the shading, the contrast, the overall depth of field, and the pose itself, the unique pose, if there is one, and you balance those elements, and you decide whether those elements found their way into the Warhol. Not whether the Warhol looks like prints, and so does Goldsmith's, because you do not have, as a photographer, a copyright in the outline, and when you look carefully, just as the district court did at the Warhol, you will not see the same lighting. You will not see the same shading. You will not see the same color. You will not see the same color balance. You will not see the same contrast. You will not see the depth of field. I think we get the point. I think we get the point. We've gone way over, so unless the panel have other questions, I want to move to the rebuttal. No. Okay, thank you. Thank you, Your Honor. Okay, thank you. Mr. Hentoff, you've got three minutes. Thank you, Judge Sullivan. I'd like to point out a couple of things. First of all, with regard to, I heard Mr. Nickus to assert that the courts are bound by the description of purpose by the and the Carriou decision. It's certainly relevant, but you also look at the works, and you look at the entire record to decide purpose. Also, what I would say is what Mr. Nickus was describing as purpose is a viewpoint or expression or something else. It's not a transformative purpose, which ever since the Supreme Court issued the Campbell versus Decuff-Rose decision, this court in particular has been analyzing it, and it's been analyzing it under the full test, which starts with, do the objects of the use supersede, of the secondary use supersede the first use? And this court in Google Books says, well, traditionally, is their commentary, right, is the new work transforming the original work in some way that has a transformative purpose or character? So the classic version is a parody, where you're commenting in some way on the original work. Then with the internet and all the advances in technology, Google Books is an excellent example, as is TVEyes, where new uses are made of the work so that you can provide, so that the secondary user can provide information about the work. Then we see in Carrieux a third category, which is really changing the original work so much and using it in a new piece of art that it's being used as a raw material to express something fundamentally different. Well, in this case, applying Campbell versus Decuff-Rose, there's this, and we see that because the district court didn't consider the transformative purpose, the district court went right to new aesthetics, new message, something that's distinctive. And there was, it's in the record, the Andy Warhol silk screens are not commenting or parodying the Lynn Goldsmith photograph. They're not providing information about the photograph, and they're certainly not using the photograph as raw materials for something else. As one of your honors said, you can look at it, you know exactly what the photo is. We absolutely, our emphasis is absolutely not on the pose and the outline. We've been very clear in our brief about all the different lighting and other decisions that absolutely still shine through when you look at particularly the Orange Prince image that was employed by, that was on the Vanity Fair cover. I will conclude by saying that if the district court ruling stands that a really creative and a really distinctive secondary artist can forego paying for a, or getting permission for a derivative use, then people like Lynn Goldsmith who make their living by creating visual and other arts are at the mercy of artists who want to be creative in a from licensing their works, and it opens it up for there just to be a free buffet for someone who might be distinctive or famous. So we urge the court to reverse the district court decision. All right, thank you both. Very well argued. We will reserve decision.